UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONALD PETERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19 CV 1302 DDN |
| | ) |
| ANDREW M. SAUL, [1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Donald Peterson for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff Donald Peterson was born on August 12, 1955, and applied for disability benefits on February 3, 2016. (Tr. 54, 55, 63.) He alleged a disability onset date of November 13, 2015, for lower back pain, shoulder pain, rash, shortness of breath, arthritis, high blood pressure, and hearing loss. (*Id*.) The Social Security Administration denied his claim for disability benefits on June 15, 2016. (Tr. 69.) Plaintiff appealed the decision and requested a hearing by an administrative law judge ("ALJ"). (Tr. 74.)

On April 10, 2018, an ALJ conducted an evidentiary hearing. (Tr. 28-53.) On July 2, 2018, the ALJ issued a decision that plaintiff was not disabled under the Social Security Act. (Tr.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 4, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is hereby substituted for Nancy A. Berryhill as defendant in this action.

1

10, 23.). On March 12, 2019, the Appeals Council denied plaintiff's request for review. (Tr. 3.) Thus, the ALJ's decision became the final decision of the Commissioner. (*Id*.)

## ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to his appeal.

**Medical History**

On July 10, 2015, plaintiff saw Dr. Tysen Petre, DO, and reported ongoing low back pain that increased with sitting and standing. (Tr. 227.) "At rest [the pain is] not too much of a problem." (*Id*.) The musculoskeletal examination of plaintiff revealed mild left lower back muscle tightness, mild tenderness over the sacroiliac joint, no radicular findings on examination, and no weakness. (*Id*.) The chest examination revealed the chest was clear to auscultation, with symmetric air entry and no wheezes, rales, or rhonchi. (*Id*.) Dr. Petre ordered an x-ray; the x-ray revealed that the lumbar disc at L3-L4 was mildly narrow, with normal alignment, no compression fractures, intact pedicles, small spurs at several interspace margins, and no spondylolisthesis. (*Id*.)

On August 7, 2015, plaintiff followed up with Dr. Petre, who diagnosed plaintiff with degenerative disc disease of the lumbar spine. (Tr. 229.) Dr. Petre noted that the x-ray showed mild degenerative changes. (*Id*.) On July 10, 2015, a chest examination revealed the same findings. Dr. Petre prescribed plaintiff with meloxicam for symptom relief. (*Id*.)

On September 11, 2015, plaintiff followed up with Dr. Petre. Dr. Petre found a mild cough, no shortness of breath or wheezing, no chest pain or dyspnea on exertion, no gait disturbance or joint swelling, normal cardiovascular rates with regular rhythm, and no murmurs, rubs, clicks or gallops. (Tr. 230.)

On June 3, 2016, plaintiff saw Dr. Alan R. Spivack, MD, for a consultative examination. Dr. Spivack reviewed plaintiff's history of complaints, noting plaintiff's complaints of arthralgia. (Tr. 251-52) The x-rays revealed mild degenerative changes to the lumbar region and pain in the right shoulder. (*Id*.) Plaintiff's back pain occurs with bending over, sleeping, watching TV, and doing housework. (*Id*.) Dr. Spivack also noted that the plaintiff has done heavy lifting, that the character of the back pain was dull but radiated to his legs, there were no surgeries or injections, that plaintiff can go grocery shopping and do some cooking and laundry, and that plaintiff uses no assistive devices. (*Id*.) Plaintiff reported shortness of breath, that he was previously told he had

emphysema, and that he had a thirty-year history of smoking but had not needed any emergency room visits or hospitalizations related to pulmonary problems or inhalers. (*Id*.)

Further, on June 3, 2016, plaintiff underwent a range of motion evaluation.  Dr. Spivack tested plaintiff's shoulders, elbows, wrists, cervical spine, and lumbar spine. (Tr. 257-258.)  When evaluating plaintiff's shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine, Dr. Spivack rated plaintiff with a 5 out of a possible 5 points, i.e. normal, on grip strength, upper extremity strength, and lower extremity muscle weakness. (*Id*.)  In all cases, Dr. Spivack rated plaintiff's effort as good and found his range of motion, reflexes, and sensation to be grossly normal. (*Id*.)

On December 6, 2016, plaintiff again saw Dr. Petre, who noted that plaintiff was having some lower back discomfort, occasional tightness in the chest with breathing, and shortness of breath. (Tr. 400-01.)   Dr. Petre prescribed plaintiff Medrol Dosepak for inflammation, Norco for pain, and a Dulera inhaler. (*Id*.)

X-rays from December 6, 2016, showed minimal atelectasis (lung deflation) at the left lung base but that the lungs were otherwise clear, no pleural effusion, no pneumothorax (abnormal collection of air in pleural space), and unremarkable osseous structures. (Tr. 265.)

On December 9, 2016, plaintiff took a pulmonary function test, which showed severe small airway obstructive disease associated with increased airway resistance. (Tr. 327.)

On January 6, 2017, Dr. Petre noted plaintiff complained of breathing problems.  A chest examination revealed the chest was clear to auscultation, with symmetric air entry and no wheezes, rales or rhonchi. (Tr. 393-94.)  The cardiovascular examination showed a normal rate with regular rhythm, normal S1 and S2, and no murmurs, rubs, clicks, or gallops. (*Id*.)  Dr. Petre reviewed the previous pulmonary function testing and diagnosed plaintiff with severe small airway disease.  Dr. Petre referred plaintiff to a pulmonary specialist for a consultation to discuss further treatment options. (*Id*.)

On January 17, 2017, plaintiff saw Dr. Moshin Ehsan, MD, on Dr. Petre's referral.  Dr. Eshan diagnosed plaintiff with moderate chronic obstructive pulmonary disease ("COPD") and left lower lobe atelectasis. (Tr. 371.)  He noted that plaintiff reported worsening shortness of breath over the last six months and had an occasional cough. (*Id*.)  Plaintiff denied wheezing, chest pain, orthopnea (shortness of breath), or paroxysmal (sudden onset of) nocturnal dyspnea. (*Id*.)  Dr.

3

Ehsan also noted that other than exertion, there were no other precipitating factors for shortness of breath and no recent worsening. (*Id*.)

On February 21, 2017, Dr. Ehsan noted that plaintiff had been doing fairly well with his symptoms at a baseline, was compliant with the Dulera inhaler, and was using the ProAir inhaler only as needed. (Tr. 367.)  Plaintiff reported an occasional cough but did not report any chest pain, palpitations, dizziness, orthopnea, or paroxysmal nocturnal dyspnea. (*Id*.)  There was no evidence of respiratory distress, labored breathing, wheezing, or crackles.  Bilateral air entry was adequate. (*Id*.)

On March 21, 2017, plaintiff saw Dr. Eshan, who noted that plaintiff did not report any cough, wheezing, chest pain, palpitations, dizziness, orthopnea, or paroxysmal nocturnal dyspnea. (Tr. 363.)  Plaintiff reported some shortness of breath with exertion, that he had been compliant with Dulera and used ProAir inhaler very occasionally. (*Id*.)  On examination, plaintiff's respiratory system showed no evidence of distress or labored breathing, and plaintiff had good air entry bilaterally. (*Id*.)  His cardiovascular examination showed the S1 and S2 as normal and with no edema. (*Id*.)  Dr. Eshan reviewed plaintiff's recent chest x-ray, which showed clear lung fields and no definite infiltrates. (*Id*.)  He recommended that plaintiff continue his medication. (Tr. 365.) Dr. Eshan's assessment included plaintiff's shortness of breath related to his moderate COPD, left lower lobe atelectasis, and history of nicotine addiction. (*Id*.)

On September 26, 2017, plaintiff saw Dr. Eshan for his COPD. (Tr. 359.)  Plaintiff reported that he had been compliant with Dulera and used the rescue inhaler as needed. (*Id*.)

On December 20, 2017, plaintiff again saw Dr. Petre, who noted that plaintiff exhibited mild discomfort along the right sacroiliac area and into the sacrum and mild tightness with the piriformis muscle. (Tr. 380.)  Dr. Petre prescribed Norco. (Tr. 385.)

On March 20, 2018, plaintiff underwent a pulmonary function test, which showed obstructive airway disease with moderate airway obstruction, air trapping without hyperinflation, and normal diffusing capacity. (Tr. 412-13.)

**ALJ Hearing**

On April 10, 2018, plaintiff testified to the following at a hearing before an ALJ. (Tr. 28-53.)  He last worked for Chipley Contracting as a truck driver in 2015. This occasionally involved heavy lifting.  He left his employment over a disagreement with his boss about the safety of the equipment plaintiff would operate; plaintiff just was not called back to work. (Tr. 35.)  After this,

4

he sought work cutting grass but did not try very hard to find work because he was having trouble breathing. (Tr. 36.) It was around this time he discovered he had COPD. (*Id.*) He testified that the breathing problems associated with his COPD are his primary health problems. (Tr.18.)

He testified that he uses a Dulera inhaler twice a day, and occasionally uses ProAir for his COPD. (*Id.*) For pain, plaintiff takes Aleve about once a day. (Tr. 44.) Plaintiff lives alone. (Tr. 41.)

Plaintiff testified that he occasionally watches his grandsons play baseball and does yardwork at his own pace and for not longer than four hours per day. This includes riding a lawn mower, using a pressure washer to clean the concrete, collecting eggs from his chickens, cleaning the chicken coup, and changing the straw a couple times a year. (Tr. 37-41.) Plaintiff becomes out of breath when he goes up and down the stairs and when he talks for a while. (Tr. 42-43.) Plaintiff testified that it is more difficult for him to breathe when it is hot outside. (Tr. 43.) Plaintiff has not engaged in substantial work since he left his job at Chipley Contracting, but testified that he had done some yard work for compensation. (Tr. 45.) He had about four clients, worked for less than eight hours a day, and did tasks such as mowing lawns and cleaning sidewalks with a blower. (Tr. 45.)

A VE also testified at the hearing. (Tr. 46.) The VE testified that plaintiff's past position was as a dump truck driver generally requires medium exertion, and as actually performed, plaintiff could lift up to heavy weights. (Tr. 49.) The ALJ asked the VE whether a hypothetical person of the claimant's age, education, work history, and vocational factors could perform his past work. (*Id.*) The VE testified that she believed that plaintiff could not perform his past work as described in the Dictionary of Occupational Titles, because his work as a dump truck driver required occasional exposure to weather. (Tr. 50.) However, the VE testified that there was other medium work in the national economy that the plaintiff could perform. (*Id.*) This includes dining room attendant busing and cleaning tables, a linen room attendant, and as a stubber in the retail trade. (*Id.*) The VE further testified that those jobs exist in significant numbers in the national economy. (*Id.*)

## **DECISION OF THE ALJ**

At Step One of the analysis prescribed by the regulations, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2020, and that he

had not engaged in substantial gainful activity since November 13, 2015, the alleged onset date of his disability. (Tr. 15.)

At Step Two, the ALJ found that plaintiff had the following severe impairments: COPD and small airway disease. (*Id*.) The ALJ did not find that any of plaintiff's other alleged impairments were severe, because "they have no more than a minimal effect on plaintiff's ability to work, have not lasted or are not expected to last at least twelve months, or are not expected to result in death." (*Id*.)

At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or were the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 17.); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ then found that plaintiff has the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) except the claimant can never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or hazardous work environments. The claimant can occasionally climb stairs or ramps. The claimant can occasionally stoop, kneel, crouch, or crawl. The claimant can frequently lift and reach overhead with either upper extremity. The claimant should avoid extreme heat or extreme cold as well as humidity. The claimant should avoid concentrated exposure to dust, fumes, and other pulmonary irritants.

(Tr. 17.)

At Step Four, the ALJ found that plaintiff was unable to perform his past relevant work. (Tr. 21.) Based on plaintiff's age, education, work experience, and RFC, the VE testified and the ALJ concluded at Step Five that plaintiff was capable of performing other jobs existing in significant numbers in the national economy, such as dining room attendant, linen room attendant, and stubber. (Tr. 22.)

## **GENERAL LEGAL PRINCIPLES**

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether substantial evidence supports the administrative final decision, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in

6

the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to benefits, a claimant must prove he or she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process); *Pates-Fires*, 564 F.3d at 942 (same).

## DISCUSSION

Plaintiff argues that the ALJ failed to support the RFC analysis with substantial evidence. Specifically, plaintiff argues that the ALJ failed to point to substantial medical evidence to support the conclusion that plaintiff could perform medium work, failed to properly consider plaintiff's lumbar degenerative disc disease in formulating the RFC, and failed to properly weigh plaintiff's testimony in assessing the RFC. This Court disagrees. The ALJ supported the RFC determination with substantial evidence.

### Medical Evidence Supports the Medium RFC Determination

"[S]ome medical evidence" must support the RFC determination. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700 (8th Cir. 2001)). Plaintiff correctly notes that the ALJ is not limited to considering only medical evidence in accessing the RFC. Here, plaintiff specifically argues that the record does not contain medical opinion evidence, treatment notes, or objective findings that support the ALJ's RFC conclusions, the determination that plaintiff could perform medium work, or plaintiff's ability to function in the workplace.

Plaintiff also argues that Social Security Ruling ("SSR") 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports the conclusions, and that the ALJ's decision provided only a summary of some of the information contained in the record as a whole. Further, plaintiff argues that the ALJ had a duty to develop the record fairly and fully to determine the extent of plaintiff's worsening symptoms and functional ability, and the ALJ's asserted failure to do so resulted in prejudice.

It is the plaintiff's burden to establish the RFC at Step Four. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). Moreover, there is no requirement that a specific medical opinion

7

support an RFC finding. *See Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Nor is there a requirement that the ALJ must link each of the components in the RFC determination to a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

The ALJ based the RFC determination on medical evidence, including objective findings and treatment notes. While discussing plaintiff's COPD, the ALJ noted that the medical records indicate that plaintiff has not experienced frequent or prolonged episodes requiring inpatient admissions, emergency room treatments, other crisis treatments, or the need for intensive treatment such as intravenous bronchodilators. (Tr. 18, 251-252, 359-377.) The ALJ also noted that the record does not document issues such as significant breathing difficulties, severe weakness, gross pulmonary hyperinflation, prolonged expiration, a depressed diaphragm, or the marked use of accessory muscles during respiration. (Tr. 19, 251-52, 359-77.) The ALJ noted that the medical treatment notes persistently show that plaintiff has generally exhibited good cardiopulmonary functions and normal respiratory rhythm and rate with lungs clear to auscultation. (*Id.*)

At plaintiff's consultative medical examination in June 2016, Dr. Spivack noted plaintiff's lungs as clear, and at his January 2017 follow-up there was no evidence of respiratory distress, labored breathing, wheezes, or crackles. (Tr. 253, 359.) At his September 2017 examination, plaintiff reported that he was cutting grass for work and did so without wearing a mask. (Tr. 19, 359.) Similarly, at plaintiff's other 2017 examinations, there was no evidence of respiratory distress, plaintiff had good air entry bilaterally, and chest x-rays showed clear lung fields. (Tr. 19.) During the December 2017 examination, plaintiff reported that he had been doing very well, and his examination showed a normal respiratory rate and comfortable respiratory effort without having to use his accessory respiratory muscles. (*Id.*) The ALJ went on to note that the pulmonary function testing in March 2018 revealed moderate obstruction and normal airway diffusing capacity. (Tr. 20, 412.)

Based upon this evidence, the ALJ concluded that plaintiff's conditions appeared to be medically managed. (Tr. 20.) Nevertheless, she determined that plaintiff's COPD and small airway disease were severe impairments and, therefore, provided for numerous postural and environmental limitations to accommodate any ongoing limitations arising from these respiratory conditions. (Tr. 17, 20.) Accordingly, the ALJ pointed to medical evidence, including objective

8

evidence and treatment notes, to support her finding that plaintiff could perform medium work with limitations. (Tr. 17.) In accordance with SSR 96-8p, the ALJ provided a narrative discussion describing how the evidence supports her conclusions. The Court may not reverse a decision merely because substantial evidence exists in the record that might support a contrary outcome or because it would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The Court cannot substitute its view of the evidence for that of the Commissioner. *Kelley v. Barnhart*, 372 F.3d 958, 960-61 (8th Cir. 2004).

Plaintiff further argues that the ALJ's RFC determination did not support the determination that plaintiff could perform medium work with medical evidence, because the record does not specifically show that plaintiff is capable of lifting 50 pounds occasionally and 25 pounds frequently; sitting six hours per day; standing and walking six hours per day; climbing stairs and ramps occasionally; and stooping, kneeling, crouching, and crawling occasionally. (Doc. 10 at 7.) This argument is unpersuasive. As the ALJ noted, the medical record does not contain any treating physicians' opinions indicating that plaintiff is disabled or even has limitations greater than those determined in the ALJ's decision. (Tr. 21.) *See Masterson v. Barnhart*, 363 F.3d 731, 739-40 (8th Cir. 2004) (holding substantial evidence supports the ALJ's decision when plaintiff failed to produce any records indicating that plaintiff is restricted from all work); *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.").

In evaluating plaintiff's shoulders, elbows, wrists, knees, hips, ankles, cervical spine, and lumbar spine, Dr. Spivack rated plaintiff with a 5 out of possible 5 points, *i.e.* normal, on grip strength, upper extremity strength, and lower extremity muscle weakness. Dr. Spivack also determined that plaintiff demonstrated normal gross reflexes, sensation, and range of motion. (Tr. 257-58.) In all instances, he rated plaintiff's effort as good. (*Id*.) This functionality further supports the ALJ's RFC determination. *See Keesee v. Colvin*, No. 4:12 CV 1231 JAR / DDN, 2013 U.S. Dist. LEXIS 133376, at *24 (E.D. Mo. Aug. 28, 2013) (noting plaintiff with COPD and degenerative arthritis of the lumbar spine evaluated with normal range of spinal motion, and this supported medium RFC determination).

Moreover, at plaintiff's June 2016 consultative examination and at his disability hearing, plaintiff indicated that he had done lifting at his former work. (Tr. 251, 34-35.) The VE also testified that plaintiff had worked as a dump truck driver, medium, and as actually performed, he

9

could lift heavy weights. (Tr. 49.) She only eliminated plaintiff's ability to work as a dump truck driver because it required occasional exposure to weather. (Tr. 50.) Further, plaintiff left his employment due to a dispute with his boss and not because of any impairment. (Tr. 35.) Thus, to the extent the ALJ did not specifically discuss plaintiff's ability to perform the abovementioned functions, it is implicit in the ALJ's finding that the plaintiff is not limited in these areas. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (finding that the ALJ implicitly found claimant was not limited in certain functions after noting that all of the functions that the ALJ specifically addressed were those in which he found a limitation).

The ALJ also considered plaintiff's testimony, including his ability to perform exertional activities at his own pace, live alone, shop for groceries, power wash his driveway, do yard work, care for and gather eggs from his chickens, and change out the straw in the chicken coup. (Tr. 18, 21.) The ALJ discussed the fact that some of these activities involve lifting, pushing, or pulling, as well as a significant amount of walking. (Tr. 21.) Further, plaintiff testified that lifting, walking, or running does not affect his breathing, if he can go at his own pace. (Tr. 43.) He also testified that he usually goes up and down his stairs a couple times a day. (Tr. 39.) The range of activities plaintiff can perform supports the ALJ's determination that he can perform medium work with limitations.

Plaintiff's argument that the ALJ improperly failed to develop the record fairly and fully is without merit. As an initial matter, plaintiff bears a heavy burden in showing prejudice. *See Haley v. Massanari*, 258 F.3d 742, 749-50 (8th Cir. 2001). Still, plaintiff is correct to argue that the ALJ may not "pick and [choose] only evidence in the record buttressing his conclusion." *Taylor o/b/o McKinnies v. Barnhart*, 333 F.Supp.2d 846, 856 (E.D. Mo. 2004). However, here the ALJ did not do so. Instead, the ALJ acknowledged plaintiff's history of COPD and small airway disease, the imaging that revealed plaintiff's minimal atelectasis, the pulmonary function testing that showed a moderate obstructive ventilator defect, the pulmonary function testing in March 2018 that showed moderate obstruction, plaintiff's own descriptions of his limitations, and his Disability and Function Report. (Tr. 18-20.)

Meanwhile, plaintiff's argument that the ALJ did not develop the record fully stems from the argument that plaintiff's shortness of breath had been worsening for the six months following his June 2016 consultative examination, arguing the ALJ failed to determine the extent of this worsening symptom. The ALJ need not seek additional clarifying statements from a treating

10

physician unless a crucial issue is underdeveloped. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Plaintiff's argument also fails because the ALJ's RFC determination expressly discussed the results from plaintiff's subsequent examinations in January 2017, February 2017, March 2017, September 2017, December 2017, and March 2018. (Tr. 19-20.) *See Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.").

With these considerations, the ALJ's RFC determination appropriately includes limitations that plaintiff should avoid extreme heat, extreme cold, humidity, as well concentrated exposure to dust, fumes, and other pulmonary irritants. (Tr. 17.) Also, as a result of these limitations, the VE testified, and the ALJ concluded, that plaintiff could no longer perform his past relevant work as a dump truck driver because it required occasional exposure to weather. (Tr. 21.) This indicates that the ALJ developed the record fairly and fully and used the medical evidence to address the extent of plaintiff's ability to function in the workplace. In response to plaintiff's testimony and medical evidence, the ALJ further provided that plaintiff can never climb ladders, ropes, or scaffolds; be exposed to unprotected heights and hazardous work environments; and can stoop, kneel, crouch, crawl, climb stairs, and climb ramps only occasionally. (Tr. 17.)

Thus, plaintiff has not met his burden and the medical evidence supports the ALJ's RFC determination.

**The ALJ Properly Considered Plaintiff's Lumbar Degenerative Disc Disease**

Plaintiff next argues that the ALJ failed to properly consider plaintiff's lumbar degenerative disc disease when assessing the RFC. Specifically, plaintiff argues that substantial evidence did not support the ALJ's determination that plaintiff's lumbar degenerative disc disease was a non-severe impairment, making the RFC determination deficient. Moreover, plaintiff argues that even if the ALJ properly determined that plaintiff's lumbar degenerative disc disease was a non-severe impairment, the ALJ failed to account for this non-severe impairment in the RFC. The Court disagrees.

In support, plaintiff argues that the United States Supreme Court held that the standard of proof for a severe medical impairment is only a "*de minimis*" standard, and plaintiff's lumbar degenerative disc disease meets this threshold. Plaintiff also argues that the ALJ had a duty under SSR 96-8P to consider plaintiff's lumbar degenerative disc disease in combination with plaintiff's

COPD and small airway disease. Thus, plaintiff concludes that the ALJ's alleged failure to consider the alleged impairments in combination led the ALJ to an incorrect conclusion that plaintiff could perform medium work.

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to perform basic work activities even if the individual's age, education, or work experience were specifically considered.  20 C.F.R. §§ 404.1520(c), 404.1522; SSRs 85-28, 16-3p.  Although this burden may not be high, it nevertheless remains the plaintiff's burden to establish that his impairment or combination of impairments is severe. *Mittelstedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); 20 C.F.R. § 404.1512(a).  If plaintiff cannot show that an impairment has more than a minimal effect on his ability to work, then the impairment is not severe.  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).  While this requirement may not be onerous, it is still not a "toothless standard."  *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

In this case, the ALJ acknowledged that she must determine whether plaintiff's impairments or combinations of impairments are severe. (Tr. 14.)  She then relied on specific medical evidence to determine that plaintiff's lumbar disease was not severe (Tr. 15.)  The ALJ acknowledged plaintiff's history of lower back pain and that plaintiff had arthralgia of the low back and right shoulder, noting that the July 2015 x-ray of plaintiff's lumbar spine revealed that the degenerative narrowing at L3 - L4 was only mild. (Tr. 16, 229.)  The ALJ also noted that imaging studies of plaintiff's back were normal.  Plaintiff is currently maintained with over-the-counter medication, Aleve, and his medical records indicate he does not require physical therapy, injections, surgical intervention, or the use of an assistive device to walk.  Further, Dr. Spivack evaluated plaintiff's range of motion in his cervical and lumbar spine as normal. (Tr. 16, Tr. 252, 257-59.)

Other medical records support the ALJ's determination.  Plaintiff's July 2015 examination notes indicate that his back alignment was normal, there were no observed compression fractures, no spondylolisthesis, his pedicles were intact, and the spurs at several interspace margins were small. (Tr. 240.)  At the June 2016 consultative examination, plaintiff indicated that his back pain was dull. (Tr. 251.)  At his disability hearing, plaintiff testified that he occasionally did heavy lifting at his former work and explained that he left his position as a dump truck driver over a

12

dispute with his boss, not because any impairment. (Tr. 34-35.)  The VE testified that plaintiff's past position was as a dump truck driver, with medium exertion level, and as actually performed he could lift heavy weights. (Tr. 49.)  The VE did not testify that plaintiff could not return to his former work due to lumbar or back pain, but because the job required occasional exposure to weather. (Tr. 50.)  Plaintiff also acknowledged that, although it becomes tiresome, he is able to carry and use a gas leaf blower to clear the leaves off his property. (Tr. 46.)

Therefore, substantial evidence supports the ALJ's conclusion that plaintiff's lumbar degenerative disc disease, even in combination with other impairments, was not a severe impairment and did not affect plaintiff's ability to perform basic work activities more than minimally.  Moreover, the medical records do not contain opinions from any treating physicians indicating limitations greater than those determined by the ALJ. (Tr. 21.)

Next, plaintiff argues that the ALJ failed to account for this non-severe impairment in the RFC; thus the ALJ improperly assessed plaintiff's lumbar degenerative disc disease.  At his disability hearing, plaintiff stated that the breathing problems related to his COPD were his primary health problems.  The ALJ acknowledged this portion of plaintiff's testimony and focused more extensively on plaintiff's respiratory limitations. (Tr. 18.)  It was appropriate for the ALJ to do so, because the ALJ had already concluded that plaintiff's back issues minimally affected his ability to perform basic work activities.

Nevertheless, in the RFC analysis, the ALJ acknowledged that plaintiff complained of back pain in his 2017 Disability Report and that he reported difficulty lifting, squatting, bending, kneeling, and acute right-sided low back discomfort. (Tr. 18.)  However, the ALJ noted that the December 2017 musculoskeletal examination revealed "normal station and posture" with only mild discomfort and tightness in the sacroiliac area. (Tr. 20, 380.)  The ALJ also considered that at the consultative examination, plaintiff reported that he could still do yard work, occasionally mow grass and trim for clients, gather eggs from his chickens, change out the straw, and go grocery shopping. (Tr. 21, 39-45.)  The ALJ noted these activities involve lifting, pushing, pulling and walking. (*Id*.)

To the extent plaintiff argues that in the Step Four analysis the ALJ did not explicitly address certain records pertaining to plaintiff's lumbar degenerative disc disease, the ALJ is not required to explain all the evidence in the record.  Because the ALJ does not reference a matter

13

does not mean the ALJ failed to rely on the evidence to make her determination. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

### The ALJ Properly Weighed Testimonial Evidence

Plaintiff argues that the ALJ did not properly consider his testimony when making the RFC determination. Specifically, plaintiff argues that the ALJ erred when relying on his activities to support the RFC. This is, plaintiff argues, because his testimony is inconsistent with the ALJ's assessment that he could perform medium work, the ALJ erroneously concluded that plaintiff's testimony was not supported by substantial evidence, and that there were inconsistencies between plaintiff's statements and the medical evidence.

Plaintiff argues that the ALJ erred in her reliance on plaintiff's activities to support the RFC, because the ALJ is required to evaluate the quality of plaintiff's daily activities, including his ability to sustain activities over time. For example, plaintiff argues that his yardwork was primarily done with a riding lawn mower, for less than eight hours per week during the summer. Moreover, because plaintiff completed his daily activities at a leisurely pace to avoid shortness of breath, he could not do more than four hours of yard work in a day, and he reported pain while sitting, standing, squatting, kneeling, bending, and lifting more than fifteen pounds. The Court disagrees that the ALJ erred in her consideration of plaintiff's activities.

Plaintiff correctly notes that the Eighth Circuit has explained that "[i]n evaluating a claimant's RFC, consideration should be given to the quality of the daily activities . . . and the ability to sustain activities, interests, and relate to others over a period of time and . . . the frequency, appropriateness, and independence of the activities must also be considered." *Leckenby v. Astrue*, 487 F.3d 626, 634 (8th Cir. 2007) (quotation marks and citation omitted). Here, the ALJ noted that plaintiff's lawn mowing was done on a riding lawn mower. (Tr. 21.) The ALJ also acknowledged that plaintiff's yard work was done at his own pace and that his yard work for clients was only part-time. (*Id.*)

Furthermore, the ALJ considered, that during the period of plaintiff's alleged period of disability, plaintiff lived alone and could complete the following activities independently: perform yard work for himself and for clients as part-time work, power wash his driveway, care for eight chickens, clean the coup, change out its straw twice a year, cook, do laundry, drive, and go grocery shopping. Some activities involved lifting, pushing, pulling and a significant amount of walking.

14

(Tr. 21.) Accordingly, the ALJ considered the quality, duration, frequency, appropriateness, and independence of plaintiff's daily activities.

Next, plaintiff argues that his testimony is inconsistent with the ALJ's RFC determination. However, plaintiff's ability to perform the abovementioned functions supports the RFC determination even if other portions of the testimony arguably do not. If, after review, the court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In any event, the ALJ provides numerous postural and environmental limitations to accommodate plaintiff. (Tr. 17.)

Plaintiff argues that the ALJ erroneously concluded both that plaintiff's testimony was not supported by substantial evidence and that there were inconsistencies between plaintiff's statements and the medical evidence. The ALJ must make express credibility determinations and set forth inconsistencies in the record that cause her to reject plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). The evaluation of a claimant's subjective complaints is not an examination of an individual's character. SSR 16-3p. The ALJ should consider all evidence in the record and apply the factors to be considered under the regulations 20 C.F.R. § 404.1529(c)(3). These factors include daily activities; the location, duration, frequency, and intensity of the pain; the medication used to alleviate symptoms; any other treatment for the pain; any other measures taken to relieve symptoms; and failure to comply with treatment. *Id*. The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Masterson*, 363 F.3d at 738. Courts generally defer to the ALJ's evaluation of credibility provided the determination is supported by "good reasons and substantial evidence." *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014); 20 C.F.R. § 404.1529; SSR 16-3p.

Here, the ALJ acknowledged and considered those factors. (Tr. 20.) She did not accept or reject plaintiff's subjective complaints solely on the basis of her personal observations. (*Id.*) Instead, the ALJ cited specific inconsistencies that did not support plaintiff's testimony. For example, the ALJ noted that plaintiff has received only routine or conservative treatment during his alleged period of disability, consisting essentially of only prescription medications and inhalers. (*Id.*) Plaintiff has not needed increased frequency of treatment, recurrent emergency room visits, inpatient hospitalization, intensive specialist care, or assistive device usage. (*Id.*) *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding lack of significant medical

restrictions was inconsistent with claimant's complaint of disabling pain). The ALJ also noted plaintiff's ability to independently complete a variety of daily activities, that he had resumed work part-time, and that he left his job as a truck driver over a dispute with his boss. (Tr. 21.) *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (finding it relevant to credibility that claimant leaves work for reasons other than for claimant's medical condition). After leaving work, plaintiff did not seek specific treatment for his breathing difficulties until December 2016. (Tr. 21.)

The ALJ's reliance on this evidence to conclude that plaintiff may not have accurately reported his symptoms, that there may be other mitigating factors against their negative impact on plaintiff's ability to engage in work activity, or that they may be exaggerated, is consistent with the Social Security Act. *See Dukes v. Barnhart*, 436 F.3d 928 (8th Cir. 2001) (upholding the credibility finding as adequate because the ALJ discussed claimant's absence of hospitalizations, limited treatment of symptoms, the ability to control his ailments through medication, his failure to diligently seek medical care, and his ability to regularly perform household chores); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding the ALJ had good cause to discredit claimant's complaints of disabling pain due to physicians prescribing conservative treatment); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998) (finding conservative treatment and no surgery consistent with discrediting claimant's testimony). The ALJ gave good reasons for finding that plaintiff's subjective complaints were not entirely consistent with the evidence record. The ALJ gave plaintiff's allegations as much weight as substantial evidence of record supports while appropriately limiting plaintiff to a range of medium work. (Tr. 21.)

## CONCLUSION

For the reasons set forth above, the final decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

      /s/   David D. Noce   
**UNITED STATES MAGISTRATE JUDGE**

Signed on October 7, 2020.

16